## A05A1272. RUTLEDGE v. THE STATE.
(623 SE2d 762)

ADAMS, Judge.

William Rutledge appeals following his conviction in a bench trial on six counts of armed robbery and one count of attempt to commit armed robbery. He asserts as his sole enumeration of error on appeal that the trial court erred in denying his motion for directed verdict as to one of the armed robbery counts.

Rutledge was charged with committing a series of seven armed robberies and two attempted armed robberies[1] in Cobb County over a seven-day period from December 11 through December 17, 2002.

---

[1] The trial court directed a verdict as to one count of armed robbery and one count of attempted armed robbery.

The charge at issue in this appeal alleged that on December 15, 2002, Rutledge "with intent to commit theft, did take property, to wit: United States Currency, from the immediate presence of Michael Rogel [sic],[2] by use of an offensive weapon and device having the appearance of an offensive weapon, to wit: a handgun. . . ."

The evidence at trial showed that Rutledge told police that he began committing robberies because he needed money to buy drugs. During the first two robberies in Cobb County, Rutledge did not have a gun, although he told the victims that he did. Because one of the victims of these robberies asked to see the gun, however, he went to a discount store and purchased a plastic pistol, which he painted with black paint to make it appear realistic. After that, Rutledge told police he had the pistol with him.

The incident at issue occurred at a Subway sandwich shop in Cobb County, and the principal witnesses, two store employees, were unavailable for trial. Michael Rochelle, the witness referred to in the indictment, died prior to trial, and a second witness could not be located. In lieu of witness testimony, the state presented a videotape of the robbery authenticated by the store owner. The state also presented the audiotape of a police interview with Rutledge after his arrest. Rutledge acknowledged to police that he appeared on the videotape from that robbery, but he did not recall being in the Subway or any other details about the incident.

At the close of the state's case, Rutledge moved for a directed verdict. The trial court denied the motion, relying upon the videotape and Rutledge's statement to police, noting:

> . . . the videotape, I did watch that, and it's clear that — that he comes in and pushes something at them, they open the cash register, he takes something from them. I don't know that you can tell it's necessarily money, but then they follow him and they chase after him. So if he hadn't taken any-thing[,] there[ ] wouldn't be any reason to chase after him in the videotape I saw, State's Exhibit 16. And last, he did admit to being there and admitted to doing — he has a confession.

Later in the trial, Rutledge testified and generally admitted his participation in a series of robberies. He stated that he had seen the videotapes, did not deny that the events had occurred and acknowl-edged that the plastic gun the state admitted into evidence belonged

---

[2] It appears from the record that the victim's name was actually Michael Rochelle.

to him. The prosecutor also asked Rutledge if he denied "that you went into these places and took money," to which Rutledge replied, "No, sir."

Rutledge testified, however, that he had no specific recollection of the December 15 Subway robbery, although he acknowledged that he appeared in the videotape of the robbery and described the events appearing on the tape:

> Q. That looks like you right there?
> A. That certainly looks like me.
>
> * * *
>
> Q. What are you doing right there?
> A. Got my hand in my pocket.
> Q. Why do you have your hand in your pocket?
> A. At that point in time, it looks like [I] just got my hand in my pocket.
> Q. Okay. Do you recognize this young man right here?
> A. No, I do not.
> Q. Okay. What's he doing right now? Can you see what he's doing[?] . . .
> A. It looks like he's getting cookies.
> Q. Okay. What are you doing right there?
> A. Looks like I am asking him for money out of the cash register.

Rutledge contends that the trial court erred in denying his motion for directed verdict on this count because the evidence was insufficient to establish the presence of an offensive weapon or a device having the appearance of such a weapon. In reviewing this argument, we apply the same standard of review that we apply when the sufficiency of the evidence is challenged. *Dorsey v. State*, 279 Ga. 534, 542 (3) (615 SE2d 512) (2005). Thus, we must determine whether the trial judge acting as a trier of fact could have found Rutledge guilty beyond a reasonable doubt. *Baker v. State*, 273 Ga. App. 297, 298 (614 SE2d 904) (2005).

Under OCGA § 16-8-41 (a), "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." The state is not required to show that the defendant displayed a weapon in order to obtain a conviction under this statute. Rather, the presence of a

weapon or a device having the appearance of an offensive weapon may be established by circumstantial evidence,

> and a conviction for armed robbery or aggravated assault may be sustained even though the weapon was neither seen nor accurately described by the victim. Some physical manifestation is required or some evidence from which the presence of a weapon may be inferred, but . . . OCGA § 16-8-41 (a) . . . [does not require] proof of an actual offensive weapon.

(Citations omitted.) *Garrett v. State*, 263 Ga. App. 310, 311-312 (587 SE2d 794) (2003). The crucial issue is "whether the defendant's acts created a reasonable apprehension on the part of the victim that an offensive weapon was being used, regardless of whether the victim actually saw the weapon." (Footnote omitted.) *Kirk v. State*, 271 Ga. App. 640, 643 (1) (610 SE2d 604) (2005).

We find that even though the record contains no testimony from the victim, the trial judge could have found from the evidence that Rutledge's actions created a reasonable apprehension on the part of the victim that he had a weapon. The videotape shows that Rutledge entered the store with his hand in his pocket, but later removed his hand and thrust something at the cashier. In response, the employee opened the cash register, removed several items and placed them on the counter. Rutledge then took these from the counter and ran away. Although it is impossible to see what Rutledge held in his hand or what exactly was removed from the register, we find that this evidence was sufficient to allow the judge to conclude beyond a reasonable doubt that Rutledge displayed the plastic gun when he removed his hand from his pocket and demanded money,[3] consistent with the pattern from his earlier robberies in which he either pointed his pocketed hand toward the victim or displayed the plastic gun. Because the evidence was sufficient to sustain a conviction for armed robbery under this count, we find no error in the trial judge's denial of the motion for directed verdict.

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 30, 2005.

*Mary Erickson*, for appellant.

---

[3] We note that although Rutledge claimed to have no independent recollection of this robbery, he reviewed the videotape from the witness stand and testified that it "looks like I am asking him for money out of the cash register."

584

Patrick H. Head, District Attorney, Amelia G. Pray, Reuben M. Green, Assistant District Attorneys, for appellee.